UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE BOURBON:                                          CIVIL ACTION
800 BOURBON STREET, LLC
APPELLANT


VERSUS                                                  No.: 19-12474

BAY BRIDGE BUILDING                                     Advisory No: 15-1052
LIMITED COMPANY, LLC
APPELLEE

## ORDER & REASONS

Before the Court is a *Notice of Appeal from Bankruptcy Court* (**Rec. Doc. 1**)

filed by Appellant 800 Bourbon Street, LLC ("Appellant"). Having considered the

briefs, the record, and the applicable law, the Court finds, for the reasons expressed

below, that the Bankruptcy Court's decision should be **AFFIRMED**.

## FACTS AND PROCEDURAL BACKGROUND

Appellant is an LLC and owner of the building located at 800 Bourbon Street

("the Property").[1] In 2005, Appellant consisted of two members, Johnny Chisholm and

Doyle Yeager. Mr. Chisholm plays a crucial role in the history of this litigation. Mr.

Chisholm was also the owner and sole member of Chisholm Properties Circuit Events

L.L.C. ("Circuit Events"). In April of 2005, Chisholm decided he wanted to purchase

the name and production rights to a series of parties held annually in Orlando,

Florida known as "Gay Days," to be owned and operated by Circuit Events.

---

[1] 800 Bourbon Street is home of the famed "Oz" night club. The building is owned by Appellant, while the club is operated by Louisiana Interests, Inc.

To secure funding for the investment, Chisholm sought a loan from Bay Bridge. Bay Bridge's owner and sole member was Chisholm's associate Julian MacQueen. Macqueen agreed to loan the $1,200,000 required to purchase the rights to "Gay Days." Due to the lack of assets owned by Circuit Events and Chisholm, Chisholm and MacQueen structured the transaction so that Appellant was the borrower, and the Property was the collateral.

Over the next few years, Bay Bridge made several additional operating loans to Appellant, while Appellant simultaneously paid back some of the original $12,000,000 loan. Eventually, Appellant filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code ("2008 Bankruptcy"). Taking into account the subsequent loans, interest, and some repayment, Bay Bridge made a secured claim for $1,360,571.01 in the 2008 Bankruptcy. In 2009, the Bankruptcy Court confirmed Appellant's Plan of Reorganization in 2009 ("2009 Plan"). The Plan provided for a treatment of Bay Bridge's claim. The interpretation of the 2009 Plan and how it treats Bay Bridge's claim is one the main issues on appeal to this Court.

On October 15, 2014, Appellant again filed for Chapter 11 Bankruptcy ("2014 Bankruptcy"). Bay Bridge believed its claim from the 2009 Plan had not yet been paid. Thus, Bay Bridge placed a claim in 2014 Bankruptcy for $1,979,886.47, which it alleged was secured by an interest in the Property. The real estate was then sold at auction for $8,175,000. After an agreement between Bay Bridge and Appellant, the claim by Bay Bridge was lowered to $1,649,000 because Bay Bridge dropped its claim

for attorneys' fees. $1,649,000 of the auction price was then set aside and placed in escrow, subject to Bay Bridge's lien and the ultimate outcome of this dispute.

On July 21, 2015, Appellant filed an adversary proceeding in the Eastern District of Louisiana objecting to Bay Bridge's Proof of Claim. Appellant claimed, inter alia, that the 2009 Plan disposed of Bay Bridge's claim in a way that renders its 2015 claim for a portion of the proceeds from the sale of the Property much lower than stated.

On September 1, 2015, Appellant filed a motion for summary judgement ("MSJ") on this issue and others that have since been dropped by Appellant. Bay Bridge then filed a cross motion for summary judgement ("Cross Motion"), seeking judgement that it possessed a valid lien on the Property for its stated claim. A hearing on the motions was set for October 15, 2015.

According to the Bankruptcy Court, Appellant initially represented that very little discovery would be needed on the cross motions for summary judgment. As a result, the Bankruptcy Court barred any discovery pending the result of the hearing on the motions for summary judgment and set an October 12, 2015 deadline for Appellant to submit a Motion to Conduct Discovery. On October 12, 2015 Appellant apparently had a change of heart and filed a Motion to Conduct Discovery. The Bankruptcy Court deferred ruling on the Motion to Conduct Discovery until after ruling on the MSJ and Cross Motion but gave no reasons for deferring ruling on that motion. On November 15, 2019 the Bankruptcy Court entered a ruling denying

Appellant's MSJ and granting Bay Bridge's Cross Motion after finding that Appellant failed to properly object to Bay Bridge's Proof Claim within 60-Days of the 2009 Plan's confirmation.

On December 4, 2015, Appellant filed a Motion to Reconsider ("First Motion to Reconsider") alleging new evidence had been discovered after the hearing on October 15 that indicated Chisholm, the signor of Appellant's notes and collateral mortgage giving rise to Bay Bridge's claim, had reach a settlement with Bay Bridge reducing the debt to $750,000. The Bankruptcy Court granted the motion due to the truncated nature of the initial discovery.

Following the Bankruptcy Court's grant of Appellant's First Motion to Reconsider, counsel for Appellant withdrew under threat of a malpractice suit. On January 26, current counsel for Appellant filed a Motion to Enroll as Counsel accompanied by a Second Motion to Reconsider. The Second Motion to Reconsider alleged that Chisholm and Julian MacQueen conspired to commit fraud by using their LLCs as signatories for personal loans. The Bankruptcy Court denied the Second Motion to Reconsider because "new counsel [thinking] of a new legal theory is not grounds for reconsideration."[2]

Immediately prior to the trial based on the grant of the First Motion to Reconsider, Appellant submitted a Motion to Designate Issues for Trial that contained all new issues. The Bankruptcy Court construed the motion as a Third

---

[2] Trial Judgment Memorandum Opinion at p.11.

Motion to Reconsider and permitted two of the issues raised by Appellant to be added as issues for trial. The court ruled in favor of Bay Bridge on all three trial issues, none of which were contested by Appellant on appeal.

Following the trial judgment, Appellant filed a timely notice of appeal. Appellant raises four issues on appeal:

1) Whether the Bankruptcy Court erred in granting summary judgement in favor of Bay Bridge on the basis that Bay Bridge had a "fully secured" claim under the 2009 plan;

2) Whether the Bankruptcy Court erred in granting summary judgement allowing Bay Bridge's claims despite facts in the record that could establish Appellant's ability to offset Bay Bridge's claim through Appellant's own fraudulent conveyance claim;

3) Whether the Bankruptcy Court's failure to provide reasons for deferring judgement on Appellant's Motion for Expedited Discovery was an abuse of discretion or in the alternative, deprived this Court of the ability to meaningfully review the order; and

4) Whether the Bankruptcy Court abused its discretion under Rule 59(e) after receiving evidence of Bay Bridge's discovery misconduct.

## LEGAL STANDARD

This Court has jurisdiction over this case pursuant to Title 28, United States Code, section 158(a) and Federal Rule of Bankruptcy Procedure 8001. *See* 28 U.S.C. § 158(a); Fed. R. Bankr. P. 8001. The standard of review for a bankruptcy appeal by a district court is the same as when a court of appeals reviews a district court proceeding. *See* 28 U.S.C. § 158(c)(2). Accordingly, the Court reviews a bankruptcy court's conclusions of law de novo and its findings of fact for clear error. *See In re Nat'l Gypsum Co.,* 208 F.3d 498, 504 (5th Cir. 2000). Mixed questions of law and fact are reviewed de novo if the bankruptcy court is developing "auxiliary legal principles" to use in future cases, but if the mixed question primarily deals with case-specific factual issues then the standard of review is clear error. *U.S. Bank N.A. v. Village At Lakeridge, LLC*, 583 U.S. 138 (2018). The Court reviews discretionary decisions for abuse of discretion. *Matter of Mendoza*, 111 F.3d 1264, 1270 (5th Cir. 1997). A bankruptcy court abuses its discretion when its ruling is based on "an erroneous review of the law or on a clearly erroneous assessment of the evidence." *In re Yorkshire, LLC*, 540 F.3d 328, 331 (5th Cir. 2008) (quoting *Chaves v. M/V Medina Star,* 47 F.3d 153, 156 (5th Cir. 1995)).

Finally, an appellate court interprets the terms of a bankruptcy reorganization plan and confirmation order *de novo* and holistically. *See In re Nat'l Gypsum Co.,* 208 F.3d 478, 474 (5th. Cir. 2000). Deference is owed "to a bankruptcy court's reasonable interpretation of ambiguous terms in the plan, however, if real ambiguity exists." *In re Davis Offshore, L.P.*, 644 F.3d 259, 263 (5th. Cir. 2011).

## DISCUSSION

Next, the Court turns to the merits of the issues raised on appeal.

### I.   THE TREATMENT OF BAY BRIDGE'S PROOF OF CLAIM IN THE 2009 PLAN

First, the Court must consider whether the Bankruptcy Court erred by granting Bay Bridge's Cross-Motion for summary judgement on the basis that the 2009 Plan gave Bay Bridge a secured *in rem* claim worth $1,360,571.01. The Court interprets a confirmation plan using contract rules of construction and interpretation. *See In re Stratford of Texas*, 635 F.2d 365, 368 (5th. Cir. 1981). Both parties agree the treatment of Bay Bridge's Proof of Claim in the 2009 Plan controls the rights of Bay Bridge in the current bankruptcy.

In support of its position, Plaintiff highlights two provisions of the 2009 Plan: (1) the Bay Bridge claim is defined as "undersecured,"[3] and (2) the treatment of the Bay Bridge claim only acknowledges Bay Bridge's claim "[t]o the extent this claimant has an allowed secured claim."[4] This language tracks the statutory language in 11 U.S.C. § 506(a), which bifurcates undersecured creditors' claims into secured and unsecured portions.[5] Thus, Appellant's proffered interpretation is  that the 2009 Plan only granted Bay Bridge a to-be-determined secured interest in the Property.

On the other hand, Bay Bridge and the Bankruptcy Court rely on two provisions of the 2009 Plan that are at odds with Appellant's proffered interpretation.

---

[3] The 2009 Plan, at 17.
[4] The 2009 Plan, at 18.
[5] An undersecured creditor is a creditor who's claim is worth more than the value of its security interest.

First, it is unquestioned that Bay Bridge submitted a "secured claim of $1,360,571.01," in 2008.[6] Second, Appellant admitted in the 2009 Plan that "the amount reflected in the Proof of Claim filed by Bay Bridge is correct."[7]

Appellant's interpretation of its *attempted* treatment of the Bay Bridge claim is persuasive. The language used in the treatment of the Bay Bridge Claim indicates Appellant's intention was to limit the secured value of Bay Bridge's Proof Claim to the unknown value of Bay Bridge's interest in the Property.

Nonetheless, that is only one of the disputed interpretations of the 2009 Plan facing the Court. The Court must also determine whether Appellant's current contention is a "Disputed Claim," and therefore barred by the 2009 Plan, which required all objections to be brought within 60 days of the confirmation order.

Appellant posits that the 60-day window is inapplicable here because Bay Bridge's claim was not Disputed at the time of the 2009 Plan. Instead, Appellant argues the claim was fully acknowledged and had its own treatment. Therefore, the entire section of the plan discussing Disputed Claims does not apply because the section only applies to claims Disputed at the time of confirmation. The Court disagrees.

Appellant first attempts to use the definition of "Disputed Claim" in support of its position. According to Article 1.33 of the 2009 Plan, a Disputed Claim is a Claim

---

[6] The 2009 Plan, at 17.
[7] The 2009 Plan, at 18.

"(a) that is listed in the schedules as disputed, contingent, or unliquidated, *or* (b) as to which (i) Proof of Claim has been filed, (ii) an objection, or request for estimation has timely been filed, and (iii) no Final Order has been entered thereon."[8]

Appellant only references Subsection(a) of Article 1.33 to buttress its claim, but it is Part(b) of Article 1.33 that is the proper avenue of analysis here. It is undisputed that Bay Bridge filed a Proof of Claim for a secured interest valued at $1,360,571.01. Therefore, according to the definition of Disputed Claim in Article 1.33(b), if an objection or request for estimation is filed then that Proof of Claim would become a Disputed Claim.

Next, the Court turns to Article 10.05 of the 2009 Plan, entitled "Procedures for Resolving Disputed Claims." Subsection 10.05(a) provides that "except as otherwise provided in this Plan, the Debtor has the right to object to any Claim filed with the Bankruptcy Court."[9] Appellant asserts that the entire Disputed Claims Section is inapplicable to the Bay Bridge Claim because the Bay Bridge Claim is discussed in detail elsewhere in the 2009 Plan. The Bay Bridge treatment, however, says nothing about Appellant's right to object to Bay Bridge's claim. There is nothing in the clear language of 10.05(a) to imply it should be read as broadly as Appellant suggests.[10]

---

[8] 2009 Plan at 6.
[9] 2009 Plan at 27.
[10] Article 10.05(a) is titled "Right to Object to Claims." Only in this specific sub-article of the Disputed Claims section of the 2009 Plan is the phrase "except as otherwise provided" mentioned. There is no indication that the phrase should be read broader than merely applying to the Debtor's ability to object to claims.

Finally, Article 10.05(b) provides for the 60-day window at issue: stating, "as soon as practicable, but in no event later than sixty (60) days after the Confirmation Date, unless otherwise ordered by the Bankruptcy Court, objections to Claims shall be filed with the Bankruptcy Court."[11]

Read in conjunction with the Article 1.33, 10.05(b) provides a 60-day window for Appellant to turn an undisputed Proof of Claim into a Disputed Claim. Article 1.33(b) states the two requirements for a Disputed Claim are a Proof of Claim and an objection to said Proof of Claim. Article 10.05(b) clearly contemplates a post-confirmation objection turning a Proof of Claim into a Disputed Claim, but that post-confirmation objection is subject to a 60-day window. Appellant claims the 60-day window does not apply to it because it never filed an objection, but the unambiguous language of Article 10.05(b) applies the 60-day window to objections specifically, not Disputed Claims in general. The 60-day window is not a window for resolving Disputed Claims; rather, it is a deadline for turning undisputed Proof of Claims at the time of confirmation into Disputed Claims.

Appellant urges a reading of 10.05(b) not supported by the text of the 2009 Plan. Appellant claims that 10.05(b) does not apply to Bay Bridge's claim because "[it was] never a Disputed Claim in the first place."[12] Article 10.05(b) is entitled "Deadline for Objecting to Claims," and thus a plain reading of the text indicates 10.05(b) is

---

[11] 2009 Plan at 27.
[12] Appellant Brief at 20-21.

applicable to all claims, not just claims that were Disputed at the time of confirmation.

Moreover, Appellant's own arguments support the interpretation that there was a dispute over the Bay Bridge's claim in the 2009 Plan, and thus an objection should have been filed in the 60-day window. Appellant states Proof of Claims are only entitled to an "evidentiary presumption" for the value of the claim as a whole, not the value of the *secured* portion of the claim. Appellant is objecting to Bay Bridge's claim that the *entire* $1,360,570.01 is secured and arguing that the Court should not extend an evidentiary presumption in support of Bay Bridge's estimation that its entire claim is secured. The only reason for Appellant to argue against the utilization of an evidentiary presumption is because there is a factual dispute. Hence, there currently exists and did exist a dispute as to whether Bay Bridge's filed claim was accurate regarding its secured value.

Furthermore, although the 2009 Plan's language treats Bay Bridge as an undersecured creditor, there is no action taken in the plan consistent with that designation. There is no valuation of Bay Bridge's interest in the Property, nor a valuation of the Property. Bay Bridge's claim was not bifurcated, such that it was entitled to receive distributions under the 2009 Plan for the unsecured portion of its claim. This further supports the Court's conclusion that Appellant should have objected to Bay Bridge's claim in the immediate aftermath of the 2009 Plan.

Finally, even if Appellant's proffered interpretation of the 2009 Plan "Disputed Claims" scheme is a viable one, so is the interpretation outlined above. Thus, the 2009 Plan is ambiguous in this area. If a confirmation plan is ambiguous, a district court owes deference to the bankruptcy court's interpretation of its own plan and order. *In re Davis Offshore, L.P.*, 644 F.3d 263. The Bankruptcy Court interpreted Article 10.05(b) of the 2009 Plan as barring Appellant's current objection to Bay Bridge's claim. Therefore, the Court should defer to the Bankruptcy Court's interpretation and affirms that the Bankruptcy Court's grant of summary judgment on Issue One.

## II.   THE DEFENSE OF FRAUDULENT CONVEYANCE WAS NOT PROPERLY RAISED

Second, the Court examines whether the Bankruptcy Court erred in granting summary judgement to Bay Bridge despite the existence of facts in the record sufficient to support Appellant's offset claim for fraudulent conveyance. The mere existence of facts in the record, however, will not result in a victory for Appellant. The record must also indicate that Appellant properly brought the facts to the attention of the Bankruptcy Court and properly raised the legal argument making the facts material. Put another way, the Bankruptcy Court was not required to "scour the party's various legal submissions to piece together appropriate arguments. A court need not make the lawyer's case." *Sentry Ins. v. Just Right Products, Inc.*, No. 14-30, 2014 WL 12576938 (N.D. Tex. Aug. 2014) (citing *Coggin v. Longview Indep. Sch. Dist.*, 337 F.3d 459, 468 n.1 (5th. Cir. 2003)).

Appellant first tried to raise the defense of setoff for fraudulent conveyance in its Second Motion to Reconsider, which was properly denied by the Bankruptcy Court. Motions to Reconsider are not for "rehashing, evidence, legal theories, or arguments that could have been offered or raised before the [court's decision]." *Templet v. Hydrochem, Inc.* 367 F.3d 473, 479 (5th. Cir. 2004). Appellant is now trying to backdoor its fraudulent conveyance defense by arguing its potential existence was clear from the record and a couple of cursory references to "potential setoff" in Appellant's Motion to Conduct Discovery.[13] Appellant never mentioned the term fraud in any of its submissions to the Bankruptcy Court until the Second Motion to Reconsider. Appellant never made any legal arguments supporting or listed any elements resembling a claim of fraud until the Second Motion to Reconsider. No reference to 11 U.S.C. § 548[14] is made until Appellant's brief in the present appeal.

Appellant's assertion that the record contained facts sufficient to support a fraudulent conveyance defense is precisely the type of legal argument a trial court is not required to piece together on its own. *See Sentry Ins*, 2014 WL 12576938. Appellant is correct that in Article 10.03 of the 2009 Plan it reserved its right to pursue "fraudulent conveyance or revocatory action under state or federal law against Bay Bridge."[15] This reservation *is* a prerequisite for a debtor to maintain standing to bring an avoidance action after a plan confirmation. *See In re Texas Wyoming Drilling, Inc.*, 647, F.3d 547, 553 (5th. Cir. 2011).

---

[13] Appellant's Motion to Conduct Discovery at 4, "Bay Bridge Claim may be subject to set off."
[14] 11. U.S.C. 548 is the statutory basis for a fraudulent conveyance claim.
[15] 2009 Plan at 25.

Such a reservation does not, however, constitute a proper raising of a legal defense in an adversarial proceeding in a subsequent bankruptcy six years later. Indeed, the reservation in the 2009 Plan proves that Appellant was aware of a potential fraudulent conveyance defense at the beginning of the present litigation yet chose not to present it until after the Bankruptcy Court had entered summary judgment for Bay Bridge. Because Appellant did not properly raise the legal argument of fraudulent conveyance before the Bankruptcy Court's grant of Bay Bridge's Cross Motion, the Court holds that the Bankruptcy Court did not err in granting Bay Bridge's Cross Motion.[16]

## III.   THE DEFERRAL OF THE RULE 56(D) MOTION

Third, this Court must determine whether the Bankruptcy Court's failure to provide reasons for deferring judgement on Appellant's Motion to Conduct Discovery was an abuse of discretion, or in the alternative deprived this Court of the ability to meaningfully review the order.  The denial of a Rule 56(d) motion is reviewed for abuse of discretion. *Am. Family Life Ins. Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th. Cir. 2013). A Rule 56(d) movant must "set forth a plausible basis for believing that the specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *Beattie v. Madison Cty. Sch. Dist.*, 254 F.3d 595, 606 (5th. Cir. 2001).

---

[16] Because this Court is holding that the fraudulent conveyance legal argument was not properly raised before the Bankruptcy Court, the Court does not decide whether there were facts in the record to support such an argument.

Therefore, the key question for the Bankruptcy Court was "whether it was likely that the requested discovery would produce the facts Appellants need to oppose [Bay Bridge's] summary judgment motion." *American Family Life Assur. Co.* 714 F.3d 887. Here, it is unclear what evidence could have been obtained from the discovery sought by Appellant that would have been relevant to the dispositive legal issue.[17] The dispositive legal issue was whether the 2009 Plan called for Appellant to object to Bay Bridge's secured claim within a 60-day window of confirmation. As discussed above, that is a pure legal question that no amount of discovery would have changed.

The other *potential* legal issue is the fraudulent conveyance defense. Yet, nowhere in the Rule 56(d) motion did Appellant mention the term fraud or fraudulent conveyance, or anything approaching a legal standard for fraud, and therefore it was unclear what precise legal argument Appellant hoped to bolster with additional discovery.

Furthermore, the Bankruptcy Court acknowledged the truncated nature of Appellant's discovery by granting Appellant's First Motion to Reconsider because "(1) it had stayed any formal discovery pending the hearing on the MSJ and Cross Motion; (2) it ordered the production of minimal documentation based on the representations of Appellant; and (3) Appellant filed a timely Motion for Discovery based on the insufficiency of the documentation submitted."[18] The Bankruptcy Court used its

---

[17] Appellant sought "to seek written discovery from Bay Bridge, Julian MacQueen, Johnny Chisholm, including Johnny Chisholm's accountant as disclosed in his bankruptcy schedules, and James Mounger, the notary who 'closed' the alleged Bay Bridge mortgage."
[18] Bankruptcy Court Trial Memorandum Opinion, at 10.

discretion as a trial court to grant further discovery via the First Motion to Reconsider.

However, the only issue Appellant sought reconsideration of with its First Motion to Reconsider was whether Johnny Chisholm had reached a settlement with Bay Bridge reducing the debt to $750,000. Trial was eventually held on that issue. Appellants did not seek reconsideration based on fraudulent conveyance in the First Motion to Reconsider.

The case *Kean v. Jack Henry & Associates, Inc.*, 577 F.App'x 342 (5th. Cir. 2014), is instructive here. In *Kean*, the trial court was faced with a Rule 56(d) motion. Instead of immediately granting it, the court gave the movant an extra two weeks to respond to the motion for summary judgment and permission to file a supplemental brief if material discovery arose. The appellate court held the "continuance, combined with the option of supplementing his briefing, mitigates any concern about Kean's ability to review the belatedly produced documents." *Id.* at 349. Essentially, it is not an abuse of discretion if the trial court uses another mechanism to address the same concerns Rule 56(d) was designed to address. *Id.* ("[D]istrict Court did not clearly abuse its discretion when it declined to deny summary judgment under Rule 56(d) and instead utilized Rule 56(d)(3) to mitigate any prejudice."). Here, the Bankruptcy Court used the First Motion to Reconsider as a mechanism to mitigate any prejudice and afford Appellant the same discovery protections as Rule 56(d).

Appellant's contention that the Bankruptcy Court's failure to provide reasons does not allow this Court to engage in meaningful review of the order has no merit. The record and accepted legal standards provided the Court the tools to engage in meaningful review in this case.

For the foregoing reasons, the Court finds that the Bankruptcy Court did not abuse its discretion when it declined to deny summary judgment under Rule 56(d).

## IV.    DENIAL OF RULE 59 MOTION ALLEGING DISCOVERY MISCONDUCT

The fourth and final issue on appeal is whether the trial court abused its discretion in failing to grant Appellant's Rule 59 motion alleging that Bay Bridge engaged in discovery misconduct. Specifically, Appellant asserts that Bay Bridge misrepresented the destruction of checks that proved a third party, and not Appellant, received the loan proceeds. A Rule 59 motion is evaluated under a clear and convincing evidence standard and the conduct complained of must be such as to prevent the losing party from fully and fairly presenting its case or defense. *Longden v. Sunderman*, 979 F.2d 1095, 1103 (5th, Cir. 1992). A district court reviews a bankruptcy court's denial of a Rule 59 motion alleging discovery misconduct under an abuse of discretion standard. *In Re Cahill*, 428 F.3d 539 (5th. Cir. 2005).

Thus, to find in Appellant's favor, this Court would have to find the Bankruptcy Court abused its discretion in determining there was not clear and convincing evidence of discovery misconduct. There is insufficient evidence in the record to overcome that double presumption.

As the Bankruptcy Court and Bay Bridge correctly point out, Appellant was aware of the underlying information confirmed by the checks as far back as 2009. The 2009 Plan states, "the loan proceeds were received by Chisholm Properties Circuit Events, not by the debtor."[19] Thus, the Court agrees with the Bankruptcy Court that the failure to obtain evidence proving that fact could not have prevented Appellant from fully and fairly presenting its case. Appellant possessed the required information to make a fraudulent conveyance defense during the entire course of the litigation but made a conscious choice not to do so until after the Bankruptcy Court ruled on the merits.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the Bankruptcy Court's *Final Judgment* is **AFFIRMED**.

New Orleans, Louisiana this 18th day of October, 2019.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

---

[19] 2009 Plan at 17.